IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHN C. BEACH, *et al.*,

    **Plaintiffs,**

    v.                                                  Case No. 2:17-cv-240
                                                          Magistrate Judge Elizabeth P. Deavers

**SECRETARY OF HOUSING AND
URBAN DEVELOPMENT,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

Plaintiffs, John C. Beach and Chelsea J. Beach, seek to quiet title to real property located in Zanesville, Ohio, which was previously owned by Defendant, Stacy A. Lang, and as against which Defendant, the United States Secretary of Housing and Urban Development ("HUD"), holds the subordinate mortgage. Plaintiffs allege that, in purchasing the property, they relied on the pay-off amount quoted by Defendant Ocwen Loan Servicing, LLC ("Ocwen"), which amount did not include the subordinate mortgage. That mortgage was therefore not paid and has not been released. Plaintiffs also seek damages from Defendant Lang for breach of the general warranty deed and indemnification and contribution for damages and costs caused by that breach.[1] Ocwen asserts a cross-claim against Defendant Lang for indemnification.

With the consent of the parties pursuant to 28 U.S.C. § 636(c) (ECF No. 12), this matter is before the Court for consideration of HUD's Motion for Judgment on the Pleadings, or, in the

---

[1] Plaintiffs seek to amend the Complaint (ECF No. 2 ("Compl.")) to assert an additional claim against Ocwen. (ECF No. 37.) That motion remains pending and does not impact the Court's consideration of the present motions regarding the claims against HUD. (Minute Entry dated November 20, 2017.)

Alternative, Motion for Summary Judgment (ECF No. 18), Plaintiffs' Combined Opposition and Motion for Summary Judgment (ECF No. 22),[2] HUD's Reply in Support of its Motion (ECF No. 29), HUD's Opposition to Plaintiffs' Motion (ECF No. 32), and Plaintiffs' Reply in Support of Their Motion (ECF No. 41). For the reasons that follow, HUD's Motion (ECF No. 18) is **GRANTED** and Plaintiffs' Motion (ECF No. 22) is **DENIED.**

## I.

A.  **The Fair Housing Administration's Single Family Insured Loan Program and Partial Claim Payment Program**

> Relevant to this action is the following federal housing program:
>
> Congress created the Federal Housing Administration's ("FHA") Single Family Insured Loan program "to meet the housing needs" of low-to-moderate income borrowers. 12 U.S.C. § 1708(a)(7). To entice mortgagee banks to make loans to such borrowers, the FHA Insured Mortgage Program ("Program") provides insurance to cover losses incurred by them in the event of borrower default and subsequent foreclosure. A mortgagee bank that experiences a loss because of foreclosure can be made whole by proceeds paid out from an insurance claim filed with the Secretary of Housing and Urban Development ("HUD"). *Id*. §§ 1709(a); *see id*. §§ 1710(a) (1), 1715u(b). Only "approved" mortgagees may originate or hold HUD–FHA mortgages. *Id*. § 1709(b)(1).

*Sinclair v. Donovan*, Nos. 1:11–CV–00010, 1:11–CV–00079, 2011 WL 5326093, at *3 (S.D. Ohio Nov. 4, 2011); *see also* excerpt from FHA Single Family Housing Policy Handbook 4000.1 (Effective Date: 03/14/2016; Last Revised: 12/30/2016) (ECF No. 18-2 at PAGEID # 225) (addressing mortgage requirements for participation "in the origination, underwriting, closing, endorsement, servicing, purchasing, holding, or selling of" FHA-insured mortgages).

When a FHA-insured mortgage loan goes into default, mortgagees must "engage in loss mitigation actions for the purpose of providing an alternative to foreclosure[.]" 12 U.S.C. §

---

[2] Although Plaintiffs moved for summary judgment on their claims against HUD and Ocwen, Plaintiffs later withdrew their motion as to Ocwen in light of its pending motion to amend. (ECF No. 44.) Accordingly, the Court considers Plaintiffs' motion for summary judgment as against only HUD at this time.

2

1715u(a).  "[L]oss mitigation provisions are intended to benefit the Government as provider of the insurance." *Sinclair*, 2011 WL 5326093, at *3.  However, FHA-eligible borrowers "are the ultimate beneficiaries of a *status quo* in which FHA-approved lenders are confident in the federal government's ability to operate a viable and sustainable program" even if such benefits "do not confer a legally protected procedural due process interest[.]"  *Id.* (emphasis in original); *cf.* Administration of Insured Home Mortgages Handbook 4330.1 (ECF No. 18-3 at Section 7-1, PAGEID # 295) ("The purpose of all collection efforts is to bring a delinquent mortgage current in as short a time as possible, *to avoid foreclosures to the extent possible*, and to minimize losses." (emphasis added)).

Loss mitigation may include, but is not limited to, special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate lien resolution, borrower incentives, and deeds in lieu of foreclosure.  12 U.S.C. § 1715u(a).  "Mortgagees must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department."  24 C.F.R. § 203.501.  Mortgagees must determine which form of loss mitigation best fits a borrower's specific situation (a requirement known as HUD's "Loss Mitigation Option Priority Waterfall").  Excerpt from FHA Single Family Housing Policy Handbook 4000.1 (Effective Date: 03/14/2016; Last Revised: 12/30/2016) (ECF No. 18-2 at PAGEID # 229).

One form of loss mitigation permits HUD to "establish a program for payment of a partial claim to a mortgagee that agrees to apply the claim amount to payment of a mortgage on a 1-to 4-family residence that is in default or facts imminent default[.]"  12 U.S.C. § 1715u(b)(1); *see also* 24 C.F.R. § 203.371(a) ("Notwithstanding the conveyance, sale or assignment

3

requirements for payment of a claim elsewhere in this part, HUD will pay partial FHA insurance benefits to mortgagees after a period of forbearance, the maximum length of which HUD will prescribe[.]"), (b) (setting forth the conditions that must be met for payment of a partial claim). "A Partial Claim is FHA's reimbursement of a Mortgagee advancement of funds on behalf of the Borrower in an amount necessary to assist in reinstating the Delinquent Mortgage under the FHA-HAMP Option." FHA Single Family Housing Policy Handbook Glossary (ECF No. 18-4 at PAGEID # 321.)[3] A partial claim may be made in connection with a modification of the FHA-insured mortgage, resulting in reinstatement of the original mortgage on terms more favorable to the borrower. 12 U.S.C. § 1715u(b)(2); *see also* excerpt from FHA Single Family Housing Policy Handbook 4000.1 (ECF No. 18-2 at PAGEID # 230). A second mortgage on the subject property in HUD's favor secures the partial claim, *i.e.*, the advancement of the funds. 12 U.S.C. § 1715u(b)(2).

The "[m]ortgagee must use documents that conform to all applicable federal and state laws." Excerpt from FHA Single Family Housing Policy Handbook 4000.1 (ECF No. 18-2 at PAGEID # 231 (noting, however, that HUD requires no "specific format" for loan modification and partial claim documents)). The borrower "must execute a mortgage in favor of HUD with terms and conditions acceptable to HUD for the amount of the partial claim[.]" 24 C.F.R. § 203.371(c). Once the loan modification and partial claim payment are completed, "[t]he [m]ortgagee must, if required by state or federal law, record the Loan Modification documents to preserve the first-lien status of the modified FHA-insured [m]ortgage." Excerpt from FHA

---

[3] "FHA-HAMP," *see* 12 U.S.C. § 1715u(b), is the FHA's Home Affordable Modification Program ("HAMP"). (ECF No. 18-4 at PAGEID # 321.) HAMP "is a federal program established by the Emergency Stabilization Act, 12 U.S.C. § 5201, *et seq.*, that is designed to help homeowners avoid foreclosure by modifying their loans." *Ray v. U.S. Bank Nat. Ass'n*, 627 F. App'x 452, 456 (6th Cir. 2015).

Single Family Housing Policy Handbook 4000.1 (ECF No. 18-2 at PAGEID # 232). Thereafter, the mortgagee submits a claim, supported by documentation, to HUD for payment. (*Id*. at PAGEID # 233–241.)

**B.    Servicing of Mortgage Loans**

Mortgage loans may be either self-serviced or maintained by a mortgage loan servicer. Affidavit of Jessica Fields, ¶ 3 (Exhibit E, ECF No. 22-2 ("Fields Affidavit").)[4] A mortgage loan servicer, who is retained by the mortgage loan holder or lender, usually performs the following: accepts or applies payments made by borrowers; pays taxes and insurance from borrower escrow accounts; and issues payoff statements when the borrower either refinances or sells the property that is secured by the mortgage loan. *Id*. at ¶ 3. FHA defines a "Servicer" as "an FHA-approved Mortgagee performing servicing actions on FHA-insured Mortgages on its behalf or on behalf of or at the direction of another FHA-approved Mortgagee." FHA Single Family Housing Policy Handbook Glossary (ECF No. 18-4 at PAGEID # 326.)

**C.    Primary and Secondary Mortgages**

On December 21, 2011, Defendant Stacy Lang purchased real property located at 7715 Hopewell National Road, Zanesville, Ohio ("the Subject Property"). Open-End Mortgage (Exhibit A, ECF No. 22-1). In connection with that purchase, Defendant Lang executed and delivered a $119,937.00 Open-End Mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Residential Finance Corporation ("Primary Mortgage"). *Id*. The Primary Mortgage was recorded with the Muskingum County Recorder's office in Volume 2493, Pages 778–88. *Id*. The Primary Mortgage was an FHA-insured mortgage and was endorsed by HUD under the National Housing Act, 12 U.S.C. § 1709(b), (i). *Id*.; Declaration of Matt B.

---

[4] Ms. Fields is an escrow processor with First American Title Insurance Company ("First American") and has been employed in the title industry since 2000. (*Id*. at ¶ 2.)

Martin at ¶ 3 (ECF No. 18-1 ("Martin Declaration")). HUD's endorsement means that, in the event Defendant Lang defaulted on her obligations, HUD would reimburse the lender the total value of the mortgage. Martin Declaration at ¶ 3.

On September 11, 2013, MERS, as nominee for Residential Finance Corporation, assigned the Primary Mortgage to Ocwen via an Assignment of Mortgage, recorded with the Muskingum County Recorder's office in Volume 2493, Page 270. Assignment of Mortgage (Exhibit B, ECF No. 22-1, PAGEID # 382).

Defendant Lang ultimately defaulted on the Primary Mortgage. Martin Declaration at ¶ 4. Because the Primary Mortgage was FHA-insured, Ocwen determined that Defendant Lang was eligible for loss mitigation under the partial claim program whereby HUD would cure the default on the Primary Loan and secure that payment with a subordinate mortgage and note. *Id*. at ¶ 5. Ocwen calculated and certified to HUD that the amount needed to cure the default was $34,689.68. *Id*. at ¶¶ 6–7; *see also* Duplicate of Advice of Payment (Exhibit B, ECF No. 18-1, PAGEID # 223).

In connection with the loss mitigation, Defendant Lang executed a Home Affordable Modification Agreement with Ocwen, which was recorded with the Muskingum County Recorder's Office in Volume 2635, Pages 881–93. Home Affordable Modification Agreement (Exhibit F, ECF No. 22-2, PAGEID ## 449–63). The Home Affordable Modification Agreement identifies the loan number as 603292718; identifies Ocwen as the "Servicer" and "Present Holder" of this agreement; and reflects that it was related to the Primary Mortgage. *Id*. at PAGEID # 449. Beginning with the third page of the Home Affordable Modification Agreement, the remaining pages of the instrument are printed on Ocwen letterhead, which

provided contact information, including a website and phone number. *Id*. at PAGEID ## 451–57.

In addition to the Home Affordable Modification Agreement, Defendant Lang executed a subordinate mortgage held by HUD as authorized by 12 U.S.C. § 1715u(b)(1), (2) and 24 C.F.R. § 203.371(d) ("Subordinate Mortgage"). Martin Declaration at ¶¶ 8–9; Subordinate Mortgage (ECF No. 22-2, PAGEID ## 463–70). The Subordinate Mortgage was recorded with the Muskingum County Recorder's office at Volume 2631, Pages 69–76. Subordinate Mortgage (ECF No. 22-2, PAGEID ## 463–70). The Subordinate Mortgage identifies the loan number as 603292718 (the same loan number as the Home Affordable Modification Agreement). *Id*. at PAGEID # 466. The cover page of this instrument identifies Ocwen as both the "Servicer" and "Present Holder." *Id*. at PAGEID # 463. Beginning with the fourth page of the Subordinate Mortgage, all remaining pages of this instrument are printed on Ocwen letterhead identical to the letterhead on the Home Affordable Modification Agreement. *Id*. at PAGEID ## 466–69. The text of the Subordinate Mortgage states, *inter alia*, as follows: "This Security is given to the Secretary of Housing and Urban Development . . . ("Lender"). Borrower [Defendant Lang] owes Lender the principal sum of U.S. $34,689.68." *Id*. at PAGEID # 466.

**D.     Plaintiffs' Purchase of the Subject Property**

On March 23, 2016, Plaintiffs closed on their purchase of the Subject Property. Fields Declaration at ¶ 13. A non-party closing title company, First American Title Insurance Company ("First American"), provided closing services. Plaintiffs' Affidavit at ¶ 3 (Exhibit Q, ECF No. 22-4, PAGEID ## 550–51). At closing, Defendant Lang executed and delivered a General Warranty deed conveying the Subject Property to Plaintiffs, which was recorded with the

Muskingum County Recorder's office in Volume 2651, Page 362. Fields Declaration at ¶ 14; General Warranty Deed (Exhibit O, ECF No. 22-4, PAGEID ## 545–46).

In connection with this transaction, First American performed a title examination. Search Order Request (Exhibit L-1 (ECF No. 22-4, PAGEID # 538)); Examination Notes (Exhibit L-2 (ECF No. 22-4, PAGEID # 539)). First American also requested a payoff statement from Ocwen. Payoff Request (Compl. Exhibit E, ECF No. 2, PAGEID # 105). Ocwen responded that the amount due was $93,222.78 as of April 1, 2016 ("Payoff Statement"). Payoff Quote (Compl. Exhibit F, ECF No. 2 at PAGEID # 106–10). First American paid $93,222.78 to Ocwen, while disbursing excess sale proceeds to Defendant Lang. Fields Declaration at ¶ 15; Settlement Statement (Exhibit P, ECF No. 22-4, PAGEID # 547–49). In issuing this payoff, First American expected that the payoff statement from Ocwen would relate collectively to the debt(s) underlying the Primary Mortgage/Home Affordable Modification Agreement and the Subordinate Mortgage. Fields Declaration at ¶ 10.

The Primary Mortgage was released of record via Release filed for record in Book 2653, Page 914 of Muskingum County Records. Certificate of Release (Exhibit S, ECF No. 22-4, PAGEID # 569). However, the Subordinate Mortgage was not released.

Since the closing, Plaintiffs continue to reside at the Subject Property. Plaintiffs' Affidavit, ¶ 2.

**E.     The Filing of the Instant Action**

This action was originally filed in the Court of Common Pleas for Muskingum County, Ohio, on January 17, 2017, and was removed to this Court on March 23, 2017, pursuant to 28 U.S.C. §§ 1442, 1444. Plaintiffs allege that, in purchasing the property, they and First American relied on the Payoff Statement quoted by Ocwen, which amount did not include the Subordinate

Mortgage. *See generally* Compl. Plaintiffs allege that the Subordinate Mortgage and the Home Affordable Modification Agreement are clouds on title to the Subject Property. *Id*. at ¶ 19. As it relates to the matters herein, Plaintiffs assert one count against HUD, seeking a declaratory judgment quieting title in the Subject Property on the basis of estoppel. *Id*. at ¶¶ 20–22.

## II.

HUD moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(c), 12(h)(2)(B) or, in the alternative for summary judgment under Federal Rule of Civil Procedure 56. Plaintiffs also move for summary judgment as to their claim against HUD. Because the parties have had notice and the opportunity to fully address the matters raised in the motions and they rely on documents outside the pleadings, the Court will construe HUD's Motion as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) ("On a motion to dismiss, a court may accept 'matters outside the pleadings,' but in doing so it generally must treat the motion 'as one for summary judgment under Rule 56.'") (quoting Fed. R. Civ. P. 12(d)).

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisc. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R.

Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III.

Here, the parties dispute whether Ohio law bars Plaintiffs' quiet title action and whether HUD is equitably estopped from asserting the Subordinate Mortgage as a lien on the Subject Property. Because the Court concludes for the reasons that follow that HUD is not estopped from enforcing the Subordinate Mortgage, the Court need not address the parties' remaining arguments.

The background underlying Plaintiffs' equitable estoppel argument is as follows. "The disclosure of the servicer of a particular mortgage-loan means that a title company contacts the servicer (not the purported holder of the debt) in order to get a payoff statement of the mortgage-

loan." Fields Affidavit at ¶ 4. Here, Plaintiffs rely on First American's averment that "[f]or purposes of clearing title, the Primary Mortgage/Home Affordable Modification Agreement are collectively considered a single mortgage instrument and the Subordinate Mortgage is considered a separate mortgage instrument." *Id*. at ¶ 7. Plaintiffs and First American represent that Defendant Lang was asked who she made her monthly payments to because the Primary Mortgage/Home Affordable Modification Agreement and Subordinate Mortgage showed that one servicer/holder, Ocwen, controlled all of the recorded instruments. *Id*. at ¶ 8. Defendant Lang confirmed she made her mortgage payments to Ocwen and, therefore, First American issued a payoff request to Ocwen. *Id*. at ¶¶ 9–10. In response, Ocwen issued its Payoff Statement, which First American interpreted as relating to all of the instruments, namely, the Primary Mortgage/Home Affordable Modification Agreement and Subordinate Mortgage. *Id*. at ¶¶ 11–12. Relying on Ocwen's Payoff Statement, First American paid $93,222.78 to Ocwen. *Id*. at ¶ 14. First American represents that it never would have allowed the closing transaction to proceed had it known that the Payoff Statement was not intended by Ocwen to relate to all of the instruments so as to release all of them as encumbrances on the title of the Subject Property. *Id*. at ¶ 16. If First American had known that Ocwen was not the "servicer" or "present holder" of the Subordinate Mortgage, First American would have contacted the separate holders and/or servicers to retrieve the information necessary to obtain releases of the instruments. *Id*. at ¶ 17.

In support of this position, Plaintiffs and First American point to other unrelated subordinate mortgages involving third parties that identify HUD as the holder of the mortgage. *Id*. at ¶¶ 18–20; ECF No. 22 at 5–7, 9. In those examples, the recorded subordinate mortgages, unlike the present Subordinate Mortgage, are not printed on a third party/servicer's letterhead and do not include either a cover page that identifies name and contact information for the

11

servicer or a statement that a title company or other person seeking a payoff statement of the subordinate mortgage should contact the holder/servicer of the primary mortgage. *Id*. Accordingly, First American takes the position that it would have contacted HUD directly to seek a payoff statement as to the Subordinate Mortgage if that instrument had not indicated that Ocwen was the "servicer" and/or "present holder" of that instrument. Fields Affidavit, ¶ 21. Plaintiffs therefore assert that HUD is "as a result of permitting the public record to incorrectly state that Ocwen was both the 'servicer' and 'present holder' of the Subordinate Mortgage, is equitably estopped from asserting the Subordinate Mortgage as a lien on the subject property as against Plaintiffs Beach." (ECF No. 22 at 3.) Plaintiffs contend that HUD is estopped even though HUD was not paid any proceeds relative to Defendant Lang's sale of the Subject Property. (*Id*. at 20.)

"The traditional elements required to invoke equitable estoppel are a definite misrepresentation by one party, intended to induce some action in reliance, and which does reasonably induce action in reliance by another party to his detriment." *U.S. v. Guy*, 978 F.2d 934, 937 (6th Cir. 1992) (citing, *inter alia*, *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984)). However, "[i]t is well established that estoppel cannot be used against the government on the same terms as private parties." *Id*. (citing cases for the proposition that equitable estoppel generally is not available against the government). "At the very minimum, some affirmative misconduct by a government agent is required as a basis of estoppel." *Id*.; *see also Duncan v. TVA Ret. Sys.*, 123 F. Supp. 3d 972, 988 (M.D. Tenn. 2015) (noting that the parties agree that asserting an equitable estoppel claim against the government "requires a heightened burden"). This misconduct "is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant." *Premo v. United States*, 599 F.3d 540, 547

(6th Cir. 2010) (citations and internal quotation marks omitted); *see also Duncan*, 123 F. Supp. 3d at 988 (noting that the heightened burden in stating an equitable estoppel claim against a government entity includes "a demonstration of affirmative (intentional or reckless) misconduct"). Accordingly, a "party seeking to estop the government has a heavy burden." *New Trier Mortg. Corp. v. U.S. Dep't of Housing and Urban Dev.*, 252 F. Supp. 2d 446, 456 (N.D. Ohio 2002); *see also United States v. Navistar*, No. 15 CV 6143, 2017 WL 839496, at *7 (N.D. Ill. Mar. 1, 2017) (observing that estoppel is "particularly hard to establish against the United States").

While Plaintiffs nevertheless dispute that a heightened burden applies in this case, "however heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present." *Heckler*, 467 U.S. at 60. Here, Plaintiffs contend that the Court must estop HUD from enforcing the Subordinate Mortgage because HUD clothed Ocwen with authority to act, HUD acted in a proprietary capacity in relation to the Subordinate Mortgage, and Plaintiffs detrimentally relied upon HUD's false statement that Ocwen was the "present holder" and "servicer" of the Subordinate Mortgage. The Court addresses Plaintiffs' arguments in turn.

**A.  Ocwen's Authority to Act**

Plaintiffs contend that HUD is bound by Ocwen's Payoff Statement because HUD clothed Ocwen with authority to act. (ECF No. 22 at 20 (citing *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 422 (1990)).) In support, Plaintiffs cite *Richmond* for the proposition that the government "'could not be bound by the mistaken representations of an agent <u>unless it were clear that the representations were within the scope of the agent's authority</u>.'" (ECF No. 22

(quoting *Richmond*, 496 U.S. at 422) (emphasis added by Plaintiffs).) Plaintiffs contend that HUD admits that it directs the primary mortgagee to record the subordinate mortgage and HUD stated in the public record that Ocwen was the "servicer" of the Subordinate Mortgage in this case, thereby authorizing Ocwen to act on its behalf. (*Id*.)

Plaintiffs' arguments are not well taken. As an initial matter, *Richmond* never established that equitable estoppel may be asserted against the government and, even if it did, the Supreme Court would be cautious about applying the doctrine in certain circumstances. *See generally Richmond*, 496 U.S. 414. Specifically, *Richmond*, noting that the Federal Tort Claims Act ("FTCA") bars actions for misrepresentation, stated that an attempt to apply the doctrine of estoppel against the government "is in practical effect one for misrepresentation, despite the application of the 'estoppel' label." *Id*. at 429–30. The *Richmond* Court therefore concluded that it "would be most hesitant to create a judicial doctrine of estoppel that would nullify a congressional decision against authorization of the same class of claims." *Id*. at 430. Therefore, even if *Richmond* had authorized applying estoppel against the government, it did not address whether application would be appropriate in this context. *See also id*. at 422 (noting that the United States Supreme Court has "reversed every finding of estoppel" against the government that it has reviewed). Notably, Plaintiffs have not pointed to any authority that establishes that a mortgagee who "engage[s] in loss mitigation actions for the purpose of providing an alternative to foreclosure," 12 U.S.C. § 1715u(a), is an agent of the government.

Nevertheless, in reply, Plaintiffs go on to argue under the theory of implied actual authority that HUD authorized Ocwen to act. (ECF No. 41 at 3–4.) Because Plaintiffs raise this for the first time in their reply memorandum, the Court need not consider this argument. *See Xiaoguang Zheng v. Soufun Holdings Ltd.*, No. 16–3940, 2017 WL 3708628, at *2 (6th Cir. May

18, 2017) (declining to consider arguments raised for the first time in a reply brief). However, even if the Court considers the argument, it is not well taken. Plaintiffs cite only to cases outside of this circuit under facts distinguishable from the instant case to patch together a theory of implied actual authority. (ECF No. 41 at 3–4 (citing *H. Landau & Co. v. United States*, 886 F.2d 322 (Fed. Cir. 1989); *Thomas v. I.N.S.*, 35 F.3d 1332 (9th Cir. 1994); *Fifth Third Bd. of W. Ohio v. United States*, 402 F.3d 1221 (Fed. Cir. 2005); *United States v. Bissett—Berman Corp.*, 481 F.2d 764 (9th Cir. 1973); *Moriarty v. Glueckert Funeral Home, Ltd,*, 155 F.3d 859 (7th Cir. 1998)).)

Moreover, subsequent authority undermines the expansive theory for which Plaintiffs cite these cases. *See*, *e.g.*, *California Sand and Gravel, Inc. v. United States*, 22 Cl.Ct. 19, 27 (Cl. Ct. 1990) ("The court believes that *Landau* and the theory of implied actual authority is of limited application, and was not intended to repeal the long established rule that, when dealing with the government, only government agents with actual authority can make a contract, express or implied." (collecting cases)).

Notably, as set forth above, authority within this Circuit emphasizes the heightened burden a party bears when seeking to apply estoppel against the government. *See*, *e.g.*, *Duncan v. TVA Ret. Sys.*, 123 F. Supp. 3d 972, 988 (M.D. Tenn. 2015) (noting that the parties agree that asserting an equitable estoppel claim against the government "requires a heightened burden"); *New Trier Mortg. Corp. v. U.S. Dep't of Housing and Urban Dev.*, 252 F. Supp. 2d 446, 456 (N.D. Ohio 2002) (stating that a "party seeking to estop the government has a heavy burden"). Accepting Plaintiffs' theory and expansive application to the present facts is in tension with the heavy burden applicable in estoppel cases against the government. Under these circumstances, and in the absence of any controlling or persuasive authority, the Court is hesitant to adopt

Plaintiffs' implied actual authority theory as applied in the present context, thereby expanding the application of estoppel against the government. *Cf. Richmond*, 496 U.S. at 430.

For all of these reasons, Plaintiffs' assertion that HUD authorized Ocwen to act is not well taken.[5]

**B.      Proprietary Capacity**

Plaintiffs next argue that HUD is estopped from enforcing the Subordinate Mortgage because HUD acted in a proprietary capacity. (ECF No. 22 at 20–25.) According to Plaintiffs, while the United States Supreme Court is reluctant to bar the government when it performs a sovereign function, the government may be estopped when it serves a proprietary role and its agents act within the scope of their delegated authority. (*Id*. at 20–21.) Plaintiffs explain that in a "sovereign" role, the government carries out unique governmental functions for the benefit of the whole public, while government activities analogous to those of a private concern are "proprietary" in nature. (*Id*. at 21.) Plaintiffs contend that the government submits to the same rules as its citizens when it enters the marketplace and seeks to enforce a contractual right. (*Id*. (quoting *McQuagge v. United States*, 197 F. Supp. 460, 469 (D.C. La. 1961).) Plaintiffs therefore take the position that "HUD, as both an alleged party to the Subordinate Mortgage and

---

[5]Although the Court relies on other reasons to reject Plaintiffs' arguments, the Court also notes that the factual record undermines the theory that Ocwen acted as an agent for HUD. Plaintiffs contend that HUD is bound by Ocwen's acts because HUD directed the primary mortgagee to record the Subordinate Mortgage and because HUD publicly stated in the Subordinate Mortgage that Ocwen was the "servicer." (ECF No. 22 at 20.) As HUD points out, however (ECF No. 29 at 3–4), the Subordinate Mortgage nevertheless goes on to state that HUD is the lender and that Defendant Lang owes HUD the money: "This Security is given to the Secretary of Housing and Urban Development [("Lender")] . . . . Borrower [Defendant Lang] owes Lender the principal sum of U.S. $34,689.68." Subordinate Mortgage (Exhibit G, ECF No. 22-2 at PAGEID # 466). This plain language undercuts the assertions of Plaintiffs and First American that they did not know that HUD was the holder of the Subordinate Mortgage. Notably, the other, unrelated comparator mortgages upon which Plaintiffs and First American rely likewise contain the same language in the body of the instrument as the Subordinate Mortgage that identifies HUD as the holder of the instrument. (ECF No. 22 at 5–7, 9; ECF No. 29 at 4–5.)

the party that directs the recordation and servicing of the Subordinate Mortgage, acts in a proprietary capacity and is to be treated no different than private citizens." (*Id*. at 21–22 (citing, *inter alia*, *Lawndale Restoration Ltd. P'ship ex re Boulevard v. United States*, 95 Fed.Cl. 498 (Ct. Cl. Nov. 23, 2010)).)

Plaintiffs' argument is not well taken. First, while HUD acknowledges that some courts have noted HUD's "proprietary" role when foreclosing on a mortgage,[6] HUD also points out that the specific question of whether HUD acts in a proprietary or sovereign capacity simply by securing an advance of funds with a subordinate mortgage under the Partial Claim Program has not been answered. (ECF No. 29 at 14.)

HUD next questions whether courts within the Sixth Circuit recognize a proprietary-capacity exception to equitable estoppel. (*Id*. at 15–17.) However, assuming without deciding that this Circuit does recognize this exception, the Court is persuaded that HUD acted in its proprietary rather than its sovereign capacity. As a general matter, "[c]ourts particularly do not favor estoppel when the government is acting in a sovereign rather than proprietary role." *Housing Auth. of Elliott Cnty. v. Bergland*, 749 F.2d 1184, 1190 (6th Cir. 1984). "An estoppel claim against the federal government requires proving the traditional elements of estoppel, *showing that the government acted in its proprietary capacity as opposed to its sovereign capacity*, and establishing that the government agent acted within the scope of his authority." *Moss v. Berryhill*, No. 4:17-CV-00003, 2018 WL 1456631, at *4 (N.D. Ga. Feb. 2, 2018) (emphasis added); *see also Matter of Turtle Creek, Ltd.*, 194 B.R. 267, 273 (Bkrtcy. N.D. Ala. 1996) (requiring the party seeking to estop the government to prove, *inter alia*, "that the

---

[6] The Court agrees with HUD that *Lawndale*, 95 Fed. Cl. 498, which arose under the context of a constitutional takings close and related to HUD's foreclosing on a private mortgage held by assignment, is factually distinguishable and inapposite.

government acted in a proprietary capacity"). "Activities undertaken by the government primarily for commercial benefit of the agency are subject to estoppel while actions involving the exercise of exclusive governmental or sovereign powers are not." *Moss*, 2018 WL 1456631, at *4; *see also United States v. Vonderau*, 837 F.2d 1540, 1541 (11th Cir. 1988) (finding the decision whether a Department of Veterans' Affairs' loan guarantee program was proprietary or sovereign function was a "difficult question"); *ATC Petroleum v. Sanders,* 661 F. Supp. 182, 187-88 (D.D.C. 1987) (*rev'd on other grounds*, 860 F.2d 1104 (D.C. Cir. 1988)) (finding loans made by the Small Business Administration pursuant to programs aimed at assisting disadvantaged businesses were sovereign because they facilitated compliance with those programs and because they were interest free). Moreover, equitable estoppel as to proprietary functions will lie against the government "only in the most extreme circumstances." *Gibson v. Resolution Trust Corp*., 51 F.3d 1016, 1025 (11th Cir. 1995). It follows, therefore, that "[w]here the loss with which a private party is threatened can be averted other than by estopping the government, a court should not estop the government." *Pierce v. Apple Valley, Inc*., 597 F. Supp. 1480, 1487 (S.D. Ohio 1984).

As set forth above, Congress created the FHA Single Family Insured Loan program "to meet the housing needs" of low-to-moderate income borrowers and to preserve public funds. *Sinclair v. Donovan*, Nos. 1:11-CV-00010, 1:11–CV–00079, 2011 WL 5326093, at *3 (S.D. Ohio Nov. 4, 2011); 12 U.S.C. § 1708(a)(7); *cf. Ferrell v. U.S. Dep't of Hous. and Urban Dev*., 186 F.3d 805, 810 (7th Cir. 1999) ("12 U.S.C. § 1441 declares the national housing policy 'goal of a decent home and a suitable living environment for every American family' and directs HUD to exercise its powers, duties, and functions consistently with that policy." (citations omitted)). Partial claim loans, which are interest free to the borrowers, prevent foreclosure of FHA-insured

mortgages, thereby preserving the FHA's insurance fund. *See* 12 U.S.C. § 1715u(a); *United States v. U.S. Bank, N.A.*, No. 3:13 CV 704, 2015 WL 2238660, at *5 (N.D. Ohio May 12, 2015). Under these circumstances,[7] despite Plaintiffs' contrary arguments, the Court is not persuaded that HUD's administration of the FHA's Single Family Insurance Loan Program was undertaken "primarily for commercial benefit of the agency" and proprietary in nature. *Moss*, 2018 WL 1456631, at *4. Stated differently, Plaintiffs have not shown that this case presents "extreme circumstances" warranting estoppel. *Pierce*, 597 F. Supp. at 1487; *accord Housing Auth. of Elliott Cnty.*, 749 F.2d at 1190 (refusing to estop government).

Having so concluded, the Court need not, and does not, address the parties' remaining arguments.

### IV.

In short, HUD is not estopped from enforcing the Subordinate Mortgage. Accordingly, HUD's Motion for Judgment on the Pleadings, or, in the Alternative, Motion for Summary Judgment (ECF No. 18) is **GRANTED** and Plaintiffs' Combined Opposition and Motion for Summary Judgment (ECF No. 22) is **DENIED**. The claims against HUD are **DISMISSED** in their entirety.

**IT IS SO ORDERED.**

Date: March 30, 2018                         /s/ *Elizabeth A. Preston Deavers*
                                             ELIZABETH A. PRESTON DEAVERS
                                             UNITED STATES MAGISTRATE JUDGE

---

[7] HUD also notes that if Plaintiffs had properly closed on the Subject Property, there would have been sufficient funds to pay off both the Primary Mortgage and Subordinate Mortgage. (ECF No. 29 at 19–20.)